# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANA L. CONLEY, | 1:10-cv-00336 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1969, has a high-school education, and previously worked as a cashier and bookkeeper. (Administrative Record ("AR") 61, 138-47, 122.) Plaintiff has attended some college. (AR 374-76.) Plaintiff stopped working in 1995 due to "marital problems" and the fact that she was "distracted." (AR 122.) Plaintiff was injured on August 4, 2001, when a rock was thrown through the windshield of her motor vehicle, striking her and causing a closed head injury and multiple fractures and lacerations to her face. (AR 183-84.)

**A.     Medical Evidence**

On August 4, 2001, Plaintiff was admitted to University Medical Center for treatment of a closed head injury, facial fractures and lacerations resulting from an assault which occurred while Plaintiff was stopped in her motor vehicle. (AR 149.) Plaintiff was in a coma upon admission and underwent surgery while hospitalized. (AR 187, 169-71.) On August 27, 2001, Plaintiff was transferred to Fresno Community Hospital and Medical Center, where she was treated until September 8, 2001. (AR 197-98.) During that stay, Plaintiff successfully had her tracheostomy discontinued. At discharge, her cognition was "markedly improved." (AR 197.) Plaintiff, however, still had "slight problems" with short-term memory but was "intact" for "normal day-to-day functions." (AR 197.)

John B. Edwards, M.D. provided follow-up care upon Plaintiff's hospital discharge. (AR 252-56.)  On October 9, 2001, he removed Plaintiff's gastronomy tube based upon the recommendation of the speech language pathologist. (AR 255, 242-43.) On November 27, 2001, Dr. Edwards noted that Plaintiff had completed her outpatient speech therapy and that she had been "ok'd to start school on a limited basis next semester." (AR 253.) Plaintiff reported "intermittent dizziness that comes and goes and some intermittent headaches for which she uses Motrin and gets good relief." (AR 253.) Dr. Edwards refilled Plaintiff's Motrin prescription at that time. On April 5, 2002, Plaintiff reported problems with depression and memory and that she had failed in school and was "upset." (AR 252.) Plaintiff had not refilled her prescription for Motrin "even though it ha[d] helped." (AR 252.) Dr. Edwards refilled her Motrin prescription and prescribed Zoloft. (AR 252.)

Plaintiff was treated by Jose Guerrero, M.D. (AR 314-29.) On May 19, 2003, Dr. Guerrero indicated that Plaintiff suffered from "[d]epression and a history of chronic headaches" and noted that Plaintiff had been taking anticonvulsant medications a few years prior to control the headaches but had "stopped the treatment with no obvious reason." (AR 314.) Dr. Guerrero ordered that Plaintiff continue ibuprofen for a limited time, increased her dosage of Zoloft and further prescribed Neurontin. (AR 314.)

On July 16, 2003, Plaintiff was referred to Rustom F. Damania, M.D., who diagnosed Plaintiff with "[t]raumatic brain injury, facial trauma, multiple facial fractures including mandibular fracture and memory impairments according to the patient" and also diagnosed "depression." (AR 260.) Plaintiff was "able to sit, stand and walk" and did "not require an assistive device for ambulation." There were "no objective findings to indicate exertional limitations . . . However, workplace/environmental limitations [were] multiple, particularly to climbing and balancing." (AR 260.) Dr. Damnia determined that there was "[i]mpairment from functioning because of memory problems" and suggested that Plaintiff "be evaluated in more detail." (AR 260.)

Plaintiff was seen by Madhav Suri, M.D. on July 29, 2003, and complained of "daily headaches and pain that increase[d] with stress, [and] dizziness that occur[red] four to six times a day." (AR 307.) Dr. Suri found that Plaintiff suffered from "depression and difficulty in handling legal/financial situations, etc." (AR 307.) A computerized tomography ("CT") scan of Plaintiff's head was performed, and the results were negative. (AR 306.)

Plaintiff was referred to Richard Engeln, Ph.D. for a psychological evaluation on August 21, 2003, who determined that Plaintiff was "capable of job adjustment in a context where instructions are unidimensional and normal supervision is provided" and that Plaintiff's "[c]oncentration and social skills [we]re adequate for work adjustment." (AR 264.)

On September 17, 2003, Edward Wong, M.D. reviewed Plaintiff's medical records and determined that Plaintiff was unable to climb ladders, ropes and scaffolds and thus advised seizure precautions. (AR 294.) Dr. Wong did not impose any other physical limitations. (AR 292-301.)

Evangeline Murillo, M.D. conducted a functional capacity assessment based on Plaintiff's records on September 18, 2003. (AR 272-91.) Dr. Murillo indicated that a residual functional

capacity ("RFC") assessment was necessary but found only a mild degree of limitation for daily living activities, social functioning, and concentration.[2] (AR 272, 282.) Plaintiff was capable of simple repetitive tasks ("SRT") for two-hour intervals, finishing a workday and interacting with coworkers and the general public. (AR 290.) Dr. Murillo concluded that Plaintiff "would not have difficulty adapting to normal work situations." (AR 290.)

On June 27, 2005, Plaintiff was referred to Ekram Michiel, M.D. for a psychiatric evaluation. (AR 330-33.) Dr. Michiel diagnosed Plaintiff as having a depressive disorder not otherwise specified and noted a global assessment of functioning ("GAF") rate of 55-57. (AR 332.) Dr. Michiel determined that Plaintiff was "able to maintain attention and concentration and to carry out one[-] or two[-]step simple job instructions." (AR 332.) Plaintiff could "relate and interact with coworkers, supervisors and the general public" but would be "unable to carry out an extensive variety of technical and/or complex instructions." (AR 332.)

On July 16, 2005, Benjamin Chang, M.D. conducted a neurological consultation of Plaintiff and determined that Plaintiff experienced a "post traumatic brain injury and multiple facial reconstructive surgeries resulting in short-term memory loss, dizziness and headaches." (AR 337.) Dr. Chang concluded that, "from a functional standpoint, the patient does not seem to have any exertional limitations. However, due to her limited peripheral vision of the left eye, dizziness and headaches she may experience workplace and environmental limitations." (AR 337.)

**B.     Lay Testimony**

On June 14, 2003, Plaintiff completed a daily activities questionnaire. (AR 73-78.) Plaintiff indicated that she would rise around 7:00 a.m. to prepare her son for school but after that she would "sleep all of the time" and that she was "tired and depressed all of the time." (AR 73.) Plaintiff stated that she was able to vacuum, dust, sweep, and do laundry without assistance, and to go

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

shopping with her sister twice a month. (AR 74.) Plaintiff noted that she would ride a bike to the store without help. (AR 75.) Plaintiff stated that she was raising her son. (AR 76.) Plaintiff would "sometimes" get "headaches and dizziness" and she would "sometimes" have difficulty understanding verbal instructions and would need them to be "explained in different ways." (AR 77.) Plaintiff suffered from "dizzy spells, short term memory loss and bad headaches." (AR 77.)

Also on June 14, 2003, Valerie Martinez, a friend of Plaintiff's, completed a third-party function report. (AR 79-87.) Ms. Martinez indicated that she would spend one to four hours every other day talking to Plaintiff. (AR 79.) Plaintiff suffered "a lot" with headaches, dizziness, and memory loss, and she slept "all of the time" (Ms. Martinez believed that Plaintiff slept "too much"). (AR 80). Nonetheless, Ms. Martinez indicated that Plaintiff could prepare lunch and dinner for herself on a daily basis and could perform household chores such as vacuuming if she did not have headaches or dizzy spells. (AR 81.)

On April 18, 2005, Plaintiff completed an adult function report. (AR 88-95.) Plaintiff stated that she would get her son ready for school in the morning and would then go back to bed. (AR 88.) Plaintiff needed instructions on getting dressed and taking medication and also needed help to clean the house. (AR 89-90.) She suffered from headaches and dizziness and felt "sick and depressed." (AR 91.) Plaintiff would not go out alone because her family did not "trust" her to come back. (AR 91.) Although she indicated that she would not drive outside of town, she admitted to "occasionally" driving "in town." (AR 91.) Further, Plaintiff stated that she would prefer to stay out of the public because she would get "embarrassed" and preferred someone to accompany her "all of the time," but she was able to go to the doctor's office and attend school functions for her son. (AR 92.)

Ms. Martinez completed another third-party function report on April 19, 2005. (AR 96-104.) Ms. Martinez indicated that she would see Plaintiff one to two days a week to check if Plaintiff needed to go shopping or if she had any appointments; she would also occasionally bring Plaintiff to her house. (AR 96.) Plaintiff was able to prepare "simple" foods and to feed herself daily. (AR 98.) Plaintiff was also able to "take out garbage and keep her room clean" but needed to be reminded to do chores. (AR 98.) Plaintiff socialized with friends and family over the phone and

occasionally in person; however, Plaintiff needed someone to accompany her "most of the time." (AR 100.) Plaintiff was "easily frustrated" and had a "short attention span[]." (AR 100-01.)

**C.     Administrative Hearing**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 46-58, 35-36.) On February 1, 2007, ALJ Bert C. Hoffman held a hearing where Plaintiff testified that she and her son had recently moved from her sister's house to a house where she lived with a roommate. (AR 371-73.) Plaintiff said that she has a valid California driver's license but had only driven locally "maybe three or four times" in the past two and a half years. (AR 373-74.) Plaintiff would keep the house "maintained" but had help from her roommate. (AR 379.) Plaintiff was able to walk or ride her bicycle to the store and would microwave meals. (AR 393-95.) Plaintiff would attend her 11-year-old son's sporting events and she and her son would walk to the store together or walk their dogs. (AR 397.) Plaintiff stated that she watched television daily for a "long period of time." (AR 390.)

Plaintiff testified that she has headaches "every day" that would last for "two to five hours." (AR 383-84.) Plaintiff said that she was depressed which affected her ability to function but that she had not sought any treatment for her depression. (AR 404.) Plaintiff's short-term memory was affected in that she had a "hard time remembering things . . . that happened a long time ago compared to yesterday." (AR 405.) Plaintiff said that she was taking "a lot" of prescription drugs for her condition but was only able to name over-the-counter medications that she was actually taking. (AR 384-85.) Plaintiff admitted she had not taken any prescription medication for six to ninth months prior to the hearing and she had not gone back to the doctor in that time since she had "given up." (AR 385-86.)

On August 1, 2007, the ALJ issued a decision finding Plaintiff not disabled since May 28, 2003. (AR 18-24.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since May 28, 2003, the date of the application; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or

equals one of the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform any past relevant work; but (5) could perform a full range of work at all exertional levels with limitations for seizure-like precautions and work requiring excellent peripheral vision; and (6) could perform jobs that exist in significant numbers in the national economy. (AR 20-24.)

Plaintiff sought review of this decision before the Appeals Council. On November 24, 2009, the Appeals Council denied review. (AR 7-9.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On February 23, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ failed to give proper consideration to the opinions of Dr. Michiel and failed to properly consider the testimony of Plaintiff and Ms. Martinez.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

**APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**A.    Consideration of Medical Opinions**

The ALJ determined that Plaintiff had "the residual capacity to perform a full range of unskilled work at all exertional levels but with the following non-exertional limitations: seizure-like precautions, and preclusion from work requiring excellent peripheral vision." (AR 21.) Plaintiff asserts that in determining this RFC, the ALJ did not properly credit the opinion of Dr. Michiel that Plaintiff is limited to performing jobs that require only one- or two-step instructions. Plaintiff argues that Dr. Michiel's limitation is more restrictive than the ALJ's finding that Plaintiff could "perform a full range of work at all extertional levels" so long as seizure precautions and peripheral vision restrictions were in place. (Doc. 12, 11:25-12:18; AR 21.) As such, Plaintiff contends that the ALJ's omission of Dr. Michiel's findings resulted in material error requiring the reversing and remanding of the decision for the taking of vocational expert testimony. (Doc. 12, 12:13-18.)

    **1.    Failure to Discuss Medical Opinion**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

However, the ALJ "need not discuss *all* evidence presented" but instead must only "explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)). Further, a medical opinion is considered uncontroverted if all the underlying medical findings are similar. *See Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

### 2. The ALJ's Failure to Mention Dr. Michiel's Findings Not Error

Plaintiff contends that Dr. Michiel's restriction of Plaintiff's work capacity to one- or two-step instructions was more limiting than the unidimensional or SRT restrictions indicated by the other doctors, thus creating a "a significant erosive factor" on Plaintiff's ability to perform unskilled work as determined in the ALJ decision. (Doc. 12, 11:25-12:4.) By failing to account for Dr. Michiel's opinion, Plaintiff asserts that the ALJ erred by rejecting it without providing specific and legitimate reasons as required. *Lester*, 81 F.3d at 830-31. However, the ALJ's failure to discuss Dr. Michiel's findings is error only if his determination was dissimilar to the medical findings of the other physicians and his report was "significant" and "probative." *See Sprague*, 812 F.2d at 1230; *Vincent*, 739 F.2d at 1394-95.

Dr. Michiel found that Plaintiff was "able to maintain attention and concentration and to carry out one[-] or two[-]step simple job instructions" and could "relate and interact with coworkers, supervisors and the general public," but would be "unable to carry out an extensive variety of technical and/or complex instructions." (AR 332.) Plaintiff has not shown that Dr. Michiel's findings were inconsistent with the conclusions of the other physicians cited in the ALJ's decision or that the findings negate the ALJ's determination that Plaintiff was able to perform unskilled work at all exertional levels. As such, the ALJ was not required to address Dr. Michiel's evidence in the decision. *See Vincent*, 739 F.2d at 1394-95.

The ALJ determined that "[n]on-exertional limitations are indicated that would not interfere with job adjustment under normal supervision, specifically inability to understand, remember and carry out complex or detailed job instructions, climb or balance, or perform work involving concentrated exposures to hazards." (AR 23.) Thus, he found Plaintiff limited to unskilled jobs. In making this finding, the ALJ relied upon the opinions of Drs. Murillo, Chang and Engeln, which

10

he found to be "fully credible, and indicate no exertional limitations." (AR 23.) Dr. Murillo concluded that Plaintiff was capable of simple repetitive tasks for two-hour intervals, finishing a workday, and interacting with coworkers and the general public. (AR 290.) Dr. Chang found that, "from a functional standpoint," Plaintiff "does not seem to have any exertional limitations" but that "she may experience workplace and environmental limitations." (AR 337.) Dr. Engeln determined that Plaintiff was "capable of job adjustment in a context where instructions are unidimensional and normal supervision is provided" and that Plaintiff's "[c]oncentration and social skills [we]re adequate for work adjustment." (AR 264.) These findings are analogous to Dr. Michiel's assessment. (AR 332.)

Beyond not contradicting the physicians' opinions discussed in the ALJ's decision, the RFC for unskilled work encompasses Dr. Michiel's opinion that Plaintiff is limited to tasks that involve one or two steps. The Code of Federal Regulations defines unskilled work as that "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a) (2008). This is consistent with Dr. Michiel's determination that Plaintiff could perform simple instructions. Further, Plaintiff admits that the ALJ's RFC determination included consideration of the "unidimensional" limitation imposed by Dr. Engeln. (Doc. 12, 11:25.) Unidimensional is defined as "relating to a single dimension or aspect; having no depth or scope." WordNet 3.0 (2006) http://wordnetweb.princeton.edu/perl/webwn?s=unidimensional (last visited on April 22, 2011). As such, the unidimensional restriction relied upon by the ALJ limits Plaintiff to employment with a "single dimension or aspect," which is consistent with Dr. Michiel's finding that Plaintiff is limited to jobs with "one[-] or two[-]step simple job instructions." (AR 332.)

Additionally, several courts have likewise concluded that a limitation to one- or two-step tasks is encompassed by an RFC for unskilled, simple work tasks. For example, in *Angulo v. Astrue*, No. 1:07-cv-01681-TAG, 2009 WL 817506, at *2 (E.D.Cal. Mar. 27, 2009), a vocational expert testified that although the plaintiff was limited to one- or two-step simple instructions, she could perform "'the entire world of unskilled work at . . . all exertional levels.'" The plaintiff argued that such a finding was "demonstrable false" and "departed" from the Department of Labor's Dictionary of Occupational Titles ("DOT") "without a reasonable explanation." *Id*. at *11. The court disagreed

and stated that "this argument has been rejected by many of the courts within the Ninth Circuit." *Id*. The Court upheld the ALJ's decision that the plaintiff would be able to perform "'simple and routine work tasks.'" *Id*. at 12.

In *Dunn v. Astrue*, No. 1:09-cv-00530-DLB, 2010 WL 1610989, at * 11 (E.D.Cal. Apr. 21, 2010), the Court found that "[a] limitation to simple, routine, repetitive work is not inconsistent with the ability to perform unskilled work" and that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions." (quoting *Rael v. Astrue*, No. 2:08-cv-01868-GGH, 2010 WL 716219, at *9 (E.D.Cal. Mar. 2, 2010) and SSR 85-15).

As noted, the plaintiff in *Angulo* was restricted to one- or two-step simple instructions and was found to be able to perform simple and routine work tasks at all exertional levels. 2009 WL 817506, at *2, *12. Accordingly, the ALJ's finding here that Plaintiff could perform unskilled work at all exertional levels is consistent with the restriction imposed by Dr. Michiel that Plaintiff is limited to performing tasks with one- or two-step instructions. Dr. Michiel's findings do not contradict the other medical evidence cited by the ALJ. Because the limitation noted by Dr. Michiel was consistent with the other medical findings and the ALJ's RFC encompassed this limitation, the ALJ's failure to discuss Dr. Michiel's findings was not an implicit rejection of his opinion requiring a statement of specific and legitimate reasons for doing so. There was no error in the ALJ's failure to cite to Dr. Michiel's report. *See Vincent*, 739 F.2d at 1394-95.

**B.    Consideration of Lay Witness Testimony**

The ALJ's August 1, 2007, decision fails to mention the third party witness testimony of Ms. Martinez, who completed third party function reports on June 14, 2003, and April 19, 2005. Plaintiff contends that the ALJ's silent disregard of this lay witness testimony is reversible error. (Doc. 12, 17:10-20.) Defendant maintains, however, that any error by the ALJ in failing to do so is harmless because Ms. Martinez's statements "described no functional limitations that would have precluded Plaintiff from performing unskilled work." (Doc. 13, 13:2-5.) According to Defendant, "even crediting Ms. Martinez's statements as true, the ALJ would not have reached a different disability determination." (Doc. 13, 13:4-6.)

### 1. Failure to Account for Lay Testimony Equals Error

Lay witness testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Lay witness testimony cannot be disregarded without comment. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted and substantial evidence supports the ALJ's decision, even though the ALJ does "not clearly link his determination to those reasons." *Lewis*, 236 F.3d at 512. However, a complete failure to discuss lay testimony is error, and a determination must therefore be made as to whether that error is harmless. *See Lewis*, 236 F.3d at 511; *Robbins*, 466 F.3d at 885; *Stout*, 454 F.3d at 1053.

### 2. The Court Cannot Confidently Conclude Here that the Error was Harmless

Ms. Martinez testified that Plaintiff suffered from "headaches," "dizzy spells" and "memory loss" and "[s]ometimes need[ed] to have [instructions] explained to her as if to a child." (AR 80, 84.) Ms. Martinez further stated that Plaintiff "need[ed] to be reminded and asked" to do chores and that sometimes "help is needed" to accomplish those tasks. (AR 98.) Plaintiff was "easily frustrated when asked and told how and when to do something" and "often" got "sidetracked." (AR 101.) Ms. Martinez noted that Plaintiff had a "[f]ear of being around a large group of people at one time and going places by herself." (AR 102.)

As noted, the ALJ's failure to discuss Ms. Martinez's statements is error. *See Lewis*, 236 F.3d at 511; *Robbins*, 466 F.3d at 885; *Stout*, 454 F.3d at 1053. Defendant argues, however, that the ALJ's error in failing failure to discuss Ms. Martinez's testimony was harmless as Ms. Martinez's observations "described no functional limitations" to Plaintiff's ability to perform unskilled work. (Doc. 13, 13:2-4.)

1  The burden is on the party attacking an agency's determination to show that prejudice
2  resulted from the error. *Shinseki v. Sanders*, 556 U.S. __, 129 S. Ct. 1696, 1705-06 (2009); *McLeod*
3  *v. Astrue*, 634 F.3d 516, 522-23 (9th Cir. 2011). However while it is the plaintiff's burden to show
4  prejudice, the Ninth Circuit has determined in *Stout* that it could not conclude that "an ALJ's silent
5  disregard of lay testimony about how an impairment limits a claimant's ability to work was
6  harmless." *Stout*, 454 F.3d at 1055-56. *See also Robbins*, 466 F.3d at 885 ("[W]e have only found
7  harmless error when it was clear from the record that an ALJ's error was 'inconsequential to the
8  ultimate nondisability determination,'" and "had never found harmless an 'ALJ's silent disregard
9  of lay testimony about how an impairment limits a claimant's ability to work.'" (citing *Stout* 454
10 F.3d at 1055-56.))[3]

11 As such, the ALJ's failure to discuss Ms. Martinez's testimony was not harmless. *See Stout*,
12 454 F.3d at 1054-56 (holding that the ALJ's silent disregard of lay testimony was not harmless error
13 because "the ALJ, not the district court, is required to provide specific reasons for rejecting lay
14 testimony," and the court "cannot affirm the decision of an agency on a ground that the agency did
15 not invoke in making its decision.") Specifically, Ms. Martinez's testimony pertains to Plaintiff's
16 ability to perform work because it implicated her ability to concentrate, understand, and follow

---

[3] The language of *Stout,* 454 F.3d 1050, and *Robbins*, 466 F.3d 880, appears to create a presumption of error somewhat difficult to square with *Sanders*, 129 S. Ct. 1696, 1704-05. Courts cannot use "mandatory presumptions and rigid rules" but must instead conduct a "case-specific application of judgment, based upon examination of the record." *Id*. at 1704-05. "The federal 'harmless-error' statute, now codified at 28 U.S.C. § 2111, tells courts to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.' That language seeks to prevent appellate courts from becoming 'impregnable citadels of technicality,'" *Id*. at 1705 (citation omitted). The Ninth Circuit determined that the holding in *Sanders* applied to Social Security disability claims and further explained that "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod*, 634 F.3d at 522-23. However, *McLeod* then stated that "*Sanders* does not mean that the claimant necessarily has to show what other evidence could have been obtained," but instead found that when the record suggested that some features of the error were harmless and others suggested the opposite, remand was appropriate. *Id*. at 523. The *McLeod* Court then:

> infer[red] from *Sanders* that, despite the burden to show prejudice being on the party claiming error by the administrative agency, the reviewing court can determine from the "circumstances of the case" that further administrative review is needed to determine whether there was prejudice from the error. Mere probability is not enough. But where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency "can decide whether re-consideration is necessary." By contrast, where harmlessness is clear and not a "borderline question," remand for reconsideration is not appropriate.

*Id.* (footnotes omitted).

instructions and, therefore, was relevant to the ALJ's determination that there were jobs in the national economy that Plaintiff can perform. If credited, this testimony indicates that Plaintiff may be more limited in her ability to concentrate and understand work-related tasks. The Court cannot confidently conclude that no reasonable ALJ could reach a different disability determination given the limitations described by Ms. Martinez. Accordingly, remand is required.

Plaintiff also argues that the ALJ erred in assessing Plaintiff's credibility. The Court need not consider these arguments in light of the need for reversal on other grounds, as the ALJ's consideration of Ms. Martinez's testimony may impact the ALJ's findings as to Plaintiff's credibility. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that the district court committed error and the decision of the ALJ is supported by substantial evidence, we do not consider the Secretary's other arguments on appeal."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

**C.     Remand Is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted).

The Court concludes that the ALJ erred in failing to give germane reasons for rejecting lay witness testimony, and the Court cannot confidently conclude that the error was harmless. In these circumstances, it is appropriate to remand this matter for further administrative proceedings.

1  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178. Here, remand is appropriate. The ALJ must address Ms. Martinez's lay witness testimony and consider whether that testimony has an impact on the disability determination. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009). Accordingly, this case is remanded for additional findings by the ALJ.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Lana L. Conley and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   May 9, 2011**                           **/s/ Sheila K. Oberto**
                                                   UNITED STATES MAGISTRATE JUDGE